**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| **ILLINOIS TOOL WORKS INC.,** | |
| **Plaintiff,** | **Civil Action No. 3:18-cv-00443-C** |
| **v.** | |
| **POLY-AMERICA L.P.,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO POLY-AMERICA'S MOTION FOR ATTORNEYS'**
**FEES AND FOR EXPERT WITNESS FEES AND EXPENSES**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 2

   A.   There is No Statutory Authority Authorizing A Fee Award In This Matter. .................... 2

      1.   The American Rule Applies Unless the Statute Allows Fee Shifting. .......................... 2

      2.   Neither Statute Applicable to this Case Provides for Fee Shifting. ............................. 2

      3.   Poly-America's Cited Cases Indicate Fee Shifting Is Not Appropriate. ....................... 3

   B.   Nothing Here Merits Fees Under Rule 54, Which Requires Egregious Conduct.............. 3

      1.   Appeal of the TTAB Decision To Defend Longstanding Trademark Rights Cannot Be Considered Vexatious, Fraudulent, or Disruptive.................................................................. 4

      2.   A Fee Award is Not Warranted Because No Part of ITW's Conduct Was In Bad Faith, Vexatious, Wanton, or for Oppressive Reasons. .................................................................. 7

          (i)    The Case Proceeded Quickly, No Discovery Motions Were Filed, and No Sanctions or Admonitions Were Issued in the Case, Ever............................................. 7

          (ii)    ITW's Decision to Challenge Standing Cannot Be Considered Vexatious, Wanton, Oppressive, or in Bad Faith Because ITW Had an Unambiguous Statutory Right to Appeal. ..................................................................................................... 8

          (iii)    ITW's Breach of Contract Claim Cannot Be Considered Vexatious or in Bad Faith Because It Immediately Withdrew the Claim Upon Filing of the Motion to Dismiss................................................................................................................... 9

          (iv)    ITW Should Not be Held Responsible for Poly-America's Choice to File Its Motion to Confirm Evidentiary Status....................................................................... 10

          (v)    ITW's Motion to Strike the Abandonment Defense was Timely. .................... 11

          (vi)    ITW Hired a Legitimate and Well Respected Expert, Which Conduct Is Not Sanctionable. ............................................................................................................ 11

   C.   The Fees Requested Are Not Tailored to the Alleged Misconduct, and Include Non-Billable and Extraneous Items. ............................................................................................. 12

III.   CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker Botts LLP v. Asarco LLC,*
  135 S. Ct. 2158 (2015) .................................................................................................2

*Baston v. Neal Spelce Associates, Inc.,*
  805 F.2d 546 (5th Cir. 1986) .................................................................................3, 4, 8, 10

*Carroll v. Jacques Admiralty Law Firm, P.C.,*
  110 F.3d 290 (5th Cir. 1997) ........................................................................................4

*Chambers v. NASCO, Inc.,*
  501 U.S. 32, 111 S. Ct. 2123 (1991) ................................................................ *passim*

*Combs v. City of Huntington, Tex.,*
  829 F.3d 388 (5th Cir. 2016) ......................................................................................14

*Conner v. Travis Cty.,*
  209 F.3d 794 (5th Cir. 2000) ....................................................................................3, 7

*Gate Guard Servs. L.P. v. Perez,*
  792 F.3d 554 (5th Cir. 2015) .....................................................................................3, 5

*MarcTec, LLC v. Johnson & Johnson,*
  664 F.3d 907 (Fed. Cir. 2012) ....................................................................................12

*Matta v. May,*
  118 F.3d 410 (5th Cir. 1997) ........................................................................................4

*Nantkwest, Inc. v. Iancu,*
  898 F.3d 1177 (Fed. Cir. 2018) ....................................................................................2

*Pearson's Inc. v. Ackerman,*
  No. 7:18-cv-00013-BP, 2019 U.S. Dist. LEXIS 125609 (N.D.T.X. 2019) .............................6

*Phillips v. First Nat'l Bank of Weatherford,*
  258 F. Supp. 2d 501 (N.D.T.X. 2002) ...........................................................................3

*Prince v. Colvin,*
  94 F. Supp.3d 787 (N.D.T.X. 2015) ...........................................................................3, 5

*Pro-Football, Inc. v. Harjo,*
  284 F.Supp.2d 96 (D.D.C. 2003) ..................................................................................6

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*,
   No. H-05-3167, 2011 U.S. Dist. LEXIS 116966 (S.D. Tex. Oct. 11, 2011) ........................5, 7

*Tricon Energy, Ltd. v. Vinmar Int'l, Ltd.*,
   2012 U.S. Dist. LEXIS 107563 (S.D.T.X. 2012) ...........................................................5, 8, 11

*Unity/Waterford-Fair Oaks v. Fireman's Fund Ins. Co.*,
   No. SA-97-CA-624-WWJ, 2002 U.S. Dist. LEXIS 22741 (W.D. Tex. Mar. 11,
   2002) .................................................................................................................................4

## Statutes

15 U.S.C. §1064 ..................................................................................................................2, 3

15 U.S.C. § 1071 ................................................................................................................3, 13

15 U.S.C. §1071(b) ..................................................................................................................8

15 U.S.C. § 1071(b)(1) .........................................................................................................1, 2

15 U.S.C. § 1071(b)(3) .............................................................................................................6

## I.     INTRODUCTION

Poly-America's motion for fees and expenses is without merit and should be denied. Poly-America was the aggressor here, having initiated these proceedings by petitioning to cancel Illinois Tool Works Inc.'s ("ITW") three longstanding trademark registrations, Serial Nos. 946120, 1294243, and 1055114 (hereinafter the "Color Line Marks") in the Trademark Trial and Appeal Board ("TTAB"). The TTAB ruled in favor of cancelling the Color Line Marks, and ITW exercised its right under 15 U.S.C. § 1071(b)(1) to defend its long-held rights and appeal the TTAB decision to this Court. ITW's decision to appeal and protect its three registrations that had been in force for 30 years was not in bad faith, vexatious, wanton, or for oppressive reasons. New evidence and testimony presented at trial supported ITW's defense of its marks. During this case, Poly-America: 1) never objected to any of ITW's conduct during trial; 2) never filed a Motion for Summary Judgment; 3) never filed a motion seeking discovery or other sanctions; and 4) had its motion for judgment at the close of ITW's case denied by this Court. Poly-America did not file a motion for fees or sanctions until this Motion. No warnings or sanctions were issued to any party throughout the proceeding, which was conducted efficiently and only lasted nineteen (19) months from filing to trial. Yet now, Poly-America has created an alternative history in which ITW's arguments have somehow become meritless or vexatious. Poly-America's recount of the case is simply untrue. None of the conduct cited warrants an award of attorneys' fees and no law supports such an award under the facts of this case.

Even the amount of fees requested is excessive.[1] First, the awarded fees cannot encompass the fees for the entirety of the litigation, they must be directed specifically at the expenses associated with the motions which were allegedly in bad faith, vexatious, wanton or for oppressive reasons. Moreover, the requested fees should not include time from legal administrative assistants and summer associates. In the event that this Court decides to award fees, the award should be reduced.

---

[1] By including this alternative argument that the requested fees are excessive, ITW in no way concedes that this case comes anywhere close to the requisite egregious situation where fees are allowed. Rather, ITW presents this argument out of an abundance of caution and because the amount of fees requested was excessive (in addition to being unwarranted in the first instance).

Accordingly, and for the reasons set forth below, this Court should deny Poly-America's motion for fees and expenses.

## II.   ARGUMENT

### A.   There is No Statutory Authority Authorizing A Fee Award In This Matter.

#### 1.   The American Rule Applies Unless the Statute Allows Fee Shifting.

Under the American Rule, each litigant must pay his own attorneys' fees, whether he wins or loses, unless a statute or Congress says otherwise. *Alyeska Pipeline*, 421 U.S. at 260-62. The American Rule presumptively applies in cases of fee-shifting unless it is explicitly displaced by statutory authority. *Id.* at 262; *Nantkwest, Inc. v. Iancu*, 898 F.3d 1177, 1187 (Fed. Cir. 2018); *Alyeska Pipeline*, 421 U.S. at 260-62. Therefore, the starting point whenever a party attempts to shift fees is whether or not a statute permits an award of attorneys' fees. *See Baker Botts LLP v. Asarco LLC*, 135 S. Ct. 2158, 2164 (2015). Poly-America simply ignored this threshold question of statutory authority in its Motion. It also failed to mention the presumptively applicable American Rule, and instead relies on the Court's inherent but limited authority to award fees under Federal Rule of Civil Procedure 54 to argue for an award of fees in this case.

#### 2.   Neither Statute Applicable to this Case Provides for Fee Shifting.

The primary consideration in awarding attorneys' fees is whether or not the statute explicitly permits fee-shifting. *Alyeska Pipeline*, 420 U.S. at 245. Here, that is not the case, and thus, the American Rule should apply. Poly-America filed a petition to cancel the incontestable registrations of ITW's marks under 15 U.S.C. §1064.[2] Attorneys' fees are not mentioned in the text of Section 1064, and thus, this statute does not explicitly permit fee-shifting. *See* 15 U.S.C. §1064. ITW then appealed the TTAB ruling under 15 U.S.C. §1071(b)(1), but that statute also fails to address or provide for attorneys' fees. *See* 15 U.S.C. §1071(b)(1). Consequently, the American Rule is not displaced by statute and should be applied.

---

[2] Incontestable marks have been in continuous use for at least five years from the date of registration and may only be cancelled on limited grounds.

### 3.     Poly-America's Cited Cases Indicate Fee Shifting Is Not Appropriate.

None of the cases cited by Poly-America suggest that fee shifting is appropriate in an appeal under Section 1071 or a cancellation proceeding under Section 1064. Procedurally, they are entirely inapposite to this case. The Court in *Baston v. Neal Spelce Associates, Inc.*, 805 F.2d 546, 551 (5th Cir. 1986), was reviewing the District Court's decision to dismiss a civil rights complaint with prejudice. In *Prince v. Colvin*, 94 F. Supp.3d 787, 791–92 (N.D.T.X. 2015), Prince appealed the denial of his application for disability and Social Security payments, but the case was remanded and plaintiff moved for fees under the Equal Justice Act. *Gate Guard Servs. L.P. v. Perez*, 792 F.3d 554, 557 (5th Cir. 2015) involved a suit against the Department of Labor seeking a declaration of compliance with the Fair Labor Standards Act and fees under the Equal Access to Justice Act. Poly-America also cited *Phillips v. First Nat'l Bank of Weatherford*, 258 F. Supp. 2d 501, 502 (N.D.T.X. 2002), but that case imposes Rule 11 sanctions. None of the cases cited arose out of proceedings before the TTAB, none were brought under Section 1064 or appealed under Section 1071, and none are trademark related.

### B.     Nothing Here Merits Fees Under Rule 54, Which Requires Egregious Conduct.

Poly-America relies on a narrow exception to the American Rule which "allows federal courts to exercise their inherent power to assess fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 2133 (1991)(internal citations omitted).

"The purpose of a court's sanctioning power is to enable it to ensure its own proper functioning." *Conner v. Travis Cty.*, 209 F.3d 794, 800 (5th Cir. 2000). However, the Supreme Court has warned, "because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers* 501 U.S. at 44. The Court's inherent power to award fees is limited in nature: "[the inherent power is] not a broad reservoir of power . . . but a limited source . . . squeezed from the need to make the court function." *Id.* at 42. "[S]uch use of the Court's power is justified

- 3 -

only when the very temple of justice has been defiled by a party's vexatious, bad faith, oppressive, or wanton conduct." *Unity/Waterford-Fair Oaks v. Fireman's Fund Ins. Co.*, No. SA-97-CA-624-WWJ, 2002 U.S. Dist. LEXIS 22741, at *17 (W.D. Tex. Mar. 11, 2002) (internal quotations omitted). Moreover, "[a] court must make a specific finding that the sanctioned party acted in bad faith. . . ." *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997).

When courts have awarded fees under this exception, it has been for egregious conduct, such as blatant disregard for court orders, as in *Chambers*, 501 U.S. at 39, deliberate dilatory discovery tactics, as in *Baston*, 805 F.2d at 551 (5th Cir. 1986), and "hurling vulgar and profane words" and threatening opposing counsel, as in *Carroll v. Jacques Admiralty Law Firm, P.C.*, 110 F.3d 290, 293 (5th Cir. 1997).

In *Chambers*, for example, the party intentionally withheld information from the court on multiple occasions, tried to deliberately deter the court from gaining jurisdiction over the property in question, made a number of meritless motions, and ignored court orders. *Chambers*, 501 U.S. at 37—38. After a series of warnings and contempt proceedings, the Supreme Court decided to award fees because of the fraud perpetrated against the court. *See id.* at 44. These authorities make plain that only extreme situations, and principally those which challenge the court's own authority, merit an award of fees under Rule 54.

In contrast, where a Court order has not been violated, or a party did not engage in delaying tactics, fees under Rule 54 are not warranted. *See Unity*, 2002 U.S. Dist. LEXIS at *17 (no fees because the plaintiff in that case "is not alleged to have violated orders of the Court and did not engage in tactics to delay the outcome of the trial. [Defendant did not assert] that plaintiff's behavior prevented a fair judgment.").

1.    **Appeal of the TTAB Decision To Defend Longstanding Trademark Rights Cannot Be Considered Vexatious, Fraudulent, or Disruptive.**

This case simply does not rise to the level demanded by the courts which have granted fees under Rule 54. The law requires more than mere recklessness in pursuing even frivolous arguments, and emphasizes that "a [party] normally has the right to defend [itself], rather than

having to keel over" when strong arguments are made against him. *Prince v. Colvin*, 94 F.Supp.3d 787, 810, 802 (N.D.T.X. 2015); *see also Tricon Energy, Ltd. v. Vinmar Int'l, Ltd.*, 2012 U.S. Dist. LEXIS 107563, *7-8, (S.D.T.X. 2012). A claim would be considered frivolous only "if the result of factual inquiries undeniably favors one party and no reasonable person could find otherwise." *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 563 (5th Cir. 2015).

An award of fees for the entire cost of litigation is only appropriate where "the entire litigation is vexatious." *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-05-3167, 2011 U.S. Dist. LEXIS 116966, at *75-77 (S.D. Tex. Oct. 11, 2011). When the Court exercises its inherent power, the amount of fees "should never be more . . . than the amounts expended as a result of the misconduct." Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 28(B)(2), at 4-40 (4th ed. 2008). The Court in *Tricon*, *supra*, denied a motion for fees under Rule 54 because "a large amount of the time [requested] appears to have been spent on at least one issue that was neither frivolous nor raised in bad faith." *Tricon*, 2012 U.S. Dist. LEXIS at *7-8.

Here, ITW was forced by Poly-America's Petition to defend three longstanding registrations from cancellation, and was doing so under a statute that explicitly provides for the *de novo* appeal of TTAB decisions to the District Court. ITW's mere exercise of its rights under this statute should certainly not be found to constitute vexatious behavior. Moreover, ITW's claim was strong enough in Poly-America's view that it did not even attempt to seek summary judgment. ITW's claim therefore cannot be characterized as vexatious, fraudulent, disruptive, or otherwise defiling "the very temple of justice." *See Chambers,* 501 U.S. at 46.

ITW's predecessor companies, Flexigrip and Minigrip, began selling reclosable fastener strips, reclosable film tubing and plastic film sheeting ("rollstock"), and plastic bags with a thin horizontal line running parallel to the top of the bag in the 1950s and 60s. (Dkt. 57, at pp. 10). ITW's predecessors applied for and obtained three Federal Trademark Registrations, as follows:

| Serial No. | Application Date | Registration Date | Incontestability Date |
|---|---|---|---|
| 946120 | October 22, 1970 | October 31, 1972 | February 13, 1977 |
| 1055114 | January 30, 1975 | December 28, 1976 | March 22, 1982 |
| 1294243 | January 5, 1983 | September 11, 1984 | June 22, 1990 |

These marks were registered in 1972, 1976, and 1984, respectively, and were all in force for 30 years prior to Poly-America's attempt to cancel them. The marks have enjoyed almost **seven decades of use** and ITW has built one of its major business units in reliance on those registrations. It was therefore reasonable to pursue this appeal to defend its longstanding property rights. Indeed, it would have been unreasonable if ITW did *not* defend its registered marks.

Further, "cancellation of a valuable registration around which a valuable business good will has been built, should be granted only with due caution and after a most careful study of all the facts." *Pro-Football, Inc. v. Harjo*, 284 F.Supp.2d 96, 123 (D.D.C. 2003) (*citing* 3 McCarthy on Trademarks and Unfair Competition § 20:64 (5th ed.).) ITW has used and enforced these trademark rights since the 1950s, and has built significant business around these registrations. ITW's actions in defending its incontestable registrations were not frivolous or vexatious, but rather necessary to protect longstanding rights around which it has built a business. ITW should not be punished for relying on its registered marks in pursuing this appeal. *See Pearson's Inc. v. Ackerman*, No. 7:18-cv-00013-BP, 2019 U.S. Dist. LEXIS 125609, at *72 (N.D.T.X. 2019).

ITW strongly disagrees with the District Court's finding that ITW failed to introduce new evidence on disputed issues of fact. ITW produced the expert survey of Hal Poret, marketplace evidence of color designs that are non-infringing, and testimony of the inventor of the '434 Patent regarding its central advance, none of which were produced at the TTAB. Moreover, even though the Court was not moved by the above new evidence, **the introduction of new evidence is not a requirement under Section 1071(b)(3)**. ITW was entitled to a review of the full factual record by an Article III judge, which was essential due to the numerous factual and legal issues the TTAB failed to address in its opinion.[3] Consequently, ITW's filing of this appeal was not vexatious, and fees should not be awarded on that basis.

Finally, neither party filed a Motion for Summary Judgment by the May 1, 2019 deadline (*See* Dkt. 24). If Poly-America truly believed that ITW's arguments were vexatious and merely

---

[3] For example, the TTAB did not rule on whether color was the central advance of the '434 Patent, what the relevant scope of the marks was, or the issue of abandonment.

for oppressive reasons, it could have filed a summary judgment motion and concluded the case. The lack of summary judgment motions reveals that ITW's positions could not have been vexatious, wanton, for oppressive reasons, or made in bad faith, because Poly-America would have filed a motion to avoid the cost of trial if it believed ITW's claims truly lacked merit. It is also significant that the Court considered ruling on the merits through summary judgment, but instead determined that a trial was necessary.

> **2.      A Fee Award is Not Warranted Because No Part of ITW's Conduct Was In Bad Faith, Vexatious, Wanton, or for Oppressive Reasons.**

Courts awarding fees for vexatious litigation limit the award to only the fees incurred as a result of the misconduct. *Symetra Life Ins. Co.,* 2011 U.S. Dist. LEXIS 116966, at *76; *see also Conner v. Travis Cty.,* 209 F.3d 794, 801-02 (5th Cir. 2000) (Appropriate remedy would be to sanction according to conduct that occurred before the district court). Yet, such a tailored award would still be inappropriate here.

The exception to the American Rule created by the Supreme Court in *Alyeska Pipeline* and elaborated on in *Chambers* is reserved for "litigation abuses," and the examples the Supreme Court cites of conduct under this exception are extreme: "delaying or disrupting the litigation," blatant disregard or hampering the enforcement of a court order, or perpetrating a fraud against the court. *See Chambers*, 501 U.S. at 46. None of ITW's conduct during this case or at trial can fairly be characterized as a litigation abuse.

> **(i)     The Case Proceeded Quickly, No Discovery Motions Were Filed, and No Sanctions or Admonitions Were Issued in the Case, Ever.**

The cases that award fees usually involve Court warnings, discovery disputes, delays, and even contempt proceedings. For example, the Court in *Chambers* warned Chambers multiple times for his reprehensible tactics and sanctioned Chambers on three separate occasions prior to awarding attorneys' fees. *See Chambers*, 501 U.S. at 37–38. Chambers also submitted several meritless motions and pleadings in an attempt to delay the court proceedings. *Id.* at 38.

In *Baston v. Neal Space Associates,* the Fifth Circuit found bad faith because Baston failed to produce evidence, consciously tried to hinder discovery efforts, refused to cooperate during depositions, and misled the opposing party. *Baston*, 805 F.2d at 550–51. Baston was even scolded by the Court for failing to produce documents. *Id.* at 548–49.

In stark contrast, this action was conducted efficiently and in good faith by both parties. This is evidenced by the brevity of the trial itself, which only lasted two days. The time between the filing of the Complaint and the trial was exceptionally short; the original Complaint was filed on February 22, 2018 and the trial began on September 3, 2019. The case had relatively few docket entries for a case that went to trial, and involved no pre-trial hearings or court conferences. All discovery concerns were resolved without Court involvement. Not once did the Court warn or sanction either party. If Poly-America truly believed that so many of ITW's positions were factually unjustifiable, Poly-America could have attempted to end the litigation much earlier by filing any form of early dismissal motion. It is telling that Poly-America did not do so at the appropriate time but now, with an invitation to seek fees, is offering a distinctly revisionist history. Further, the Court considered ruling on summary judgment rather than proceeding to trial, but agreed with ITW that a trial was necessary in this case.

> **(ii)**     **ITW's Decision to Challenge Standing Cannot Be Considered Vexatious, Wanton, Oppressive, or in Bad Faith Because ITW Had an Unambiguous Statutory Right to Appeal.**

Poly-America argues that ITW's decision to challenge Poly-America's standing to seek cancellation of ITW's trademarks was frivolous because the TTAB had already ruled on the issue. However, the TTAB's determination of standing is appealable under 15 U.S.C. §1071(b). Moreover, "a party should not be penalized for maintaining an aggressive litigation posture," and "the presence of merit in a claim or defense may negate any finding of bad faith in its filing." *Baston,* 805 F.2d at 550; *see also Tricon*, 2012 U.S. Dist. LEXIS 107563, at *7-8.

ITW simply exercised its statutory right to appeal on the standing issue. ITW also introduced at trial <u>new</u> admissions by Poly-America that it did not intend and has never intended

to sell rollstock or zippers as standalone products. (*See* ITW Post-Trial Brief, Dkt. No. 113, at 18). Those products are the products covered by two of the trademark registrations at issue in this case. Under these circumstances, ITW's argument that Poly-America lacked standing because it did not intend to sell the products covered by the registrations was legitimate and reasonable. The trial court did not elect to make a fresh determination based on the new admissions presented by ITW at trial, but that does not mean that the appeal of the TTAB's ruling on standing was vexatious. ITW was warranted in challenging Poly-America's standing to seek cancellation of ITW's marks, and no fees should be awarded for this challenge.

> **(iii)    ITW's Breach of Contract Claim Cannot Be Considered Vexatious or in Bad Faith Because It Immediately Withdrew the Claim Upon the Filing of the Motion to Dismiss.**

Poly-America incorrectly contends that ITW demonstrated a "scorched earth approach" to the case by including a breach of contract claim in its original Complaint. Poly-America filed a motion to dismiss all claims (Dkt. 14), including the breach of contract claim. Upon considering that motion, ITW promptly voluntarily dismissed the breach of contract claim. (Dkt. 18). It was Poly-America who prolonged the proceedings by then filing a baseless "Objection" to the Notice of Voluntary Dismissal. (Dkt. 19). This Court denied Poly-America's Motion to Dismiss as moot because the Amended Complaint had already been filed. (Dkt. 22). Poly-America then chose to answer the Amended Complaint instead of arguing its remaining contentions in the Motion to Dismiss. Though Poly-America now claims dispensing of the breach of contract claim caused insurmountable costs, Poly-America's Motion to Dismiss encompassed the entire case, not just the breach of contract claim. Moreover, according to its billing invoices, only twenty-five percent of the cost of filing their Motion to Dismiss was due specifically to the breach of contract claim (Dkt. 123 at APP015-APPX020). ITW should not be responsible for the cost of Poly-America's strategic decision to answer the Amended Complaint and abandon its Motion to Dismiss. Consequently, ITW's actions in voluntarily dismissing the breach of contract claim were reasonable, and the matter was resolved efficiently. It should not warrant an award of attorneys' fees.

### (iv)   ITW Should Not be Held Responsible for Poly-America's Choice to File Its Motion to Confirm Evidentiary Status.

Poly-America maintains that it was forced to confirm the evidentiary status of the TTAB record by filing its Motion to Confirm. This is incorrect. First, Poly-America had cheaper, more efficient ways to handle its very limited question of whether ITW was entitled to assert objections, such as hearsay, to portions of the TTAB record. Poly-America could have requested that the judge reconsider his ruling to deny a pretrial conference, or could have filed a motion for a pre-trial conference explaining to the Court that such a conference was necessary to get guidance regarding the manner in which the TTAB record would be handled. Poly-America could have raised the issue as a Motion in Limine, or even as a Motion to Clarify since the issue was not the TTAB record but specific objections to portions of that record. Instead, Poly-America opted for the more expensive, formal motion practice of filing the Motion to Confirm. ITW should not be penalized for Poly-America's decision.

Poly-America has also argued that ITW's attempt to assert new objections to evidence in the TTAB trial record was unjustified. However, as far as ITW is aware, this is a novel issue never before addressed by a federal court. ITW argued that the parties agreed to preserve the right to object to relevance and admissibility of individual portions of the TTAB record (Dkt. 38, at pp. 5), that under the Federal Rules of Civil Procedure and of Evidence, the Court can treat any evidence before it as if originally produced in this suit (*Id.* at pp. 7), and that review of the parties' evidentiary objections would assist the court in complying with relevant law under the TTAB (*Id.* at pp. 10—11). Therefore, it was appropriate for ITW to argue this position under the explicit standard in *Baston*, which provides that "a party should not be penalized for maintaining an aggressive litigation posture." *Baston,* 805 F.2d at 550.

Additionally, Poly-America lamented that its costs increased because it had to prepare to "re-try" the underlying action as if ITW was able to argue its new objections (Dkt. 123 at APP009). This complaint, however, should carry little weight, as Poly-America's counsel also claims to have intimate familiarity with the TTAB proceedings in this case. (Dkt. 122, at pp. 14). Because Poly-

America's strategic decision to engage in motion practice caused these costs and because ITW's argument had merit, ITW should not be responsible for Poly-America's fees.

### (v)   ITW's Motion to Strike the Abandonment Defense was Timely.

Poly-America claims ITW's Motion to Strike Poly-America's abandonment defense (Dkt. 93) was meritless and delayed and therefore sanctionable. However, Poly-America's intent to pursue the abandonment defense was not made clear to ITW until Poly-America's pre-trial submissions (*See* Poly-America Pre-Trial Brief, Dkt. 64). Therefore, ITW was as timely in bringing its motion to strike the defense as it could have been. ITW had no reason to believe that Poly-America was still pursuing the defense because the TTAB demurred on the issue (Dkt. 119) and because Poly-America did not actively seek any discovery regarding abandonment. Moreover, ITW's Motion to Strike Poly-America's Abandonment Defense was a procedural argument. ITW justifiably believed that abandonment must be brought as a separate claim, rather than as a defense. ITW noted that similarly-situated courts have rejected Federal Rule of Civil Procedure 8(c)(2) as a mechanism to designate that abandonment is an affirmative defense, and Poly-America did not seek leave to amend its pleading to add an abandonment claim in a timely manner (Dkt. 83, at pp. 2-4). ITW's Motion was well-supported by the facts and the law, and the decision by the Court to deny that motion does not make it sanctionable litigation conduct. *See Tricon*, 2012 U.S. Dist. LEXIS 107563 at *6.

This is not the type of "delay" contemplated by the Supreme Court's exceptions to the American Rule. *Chambers* found that Chambers had submitted several meritless motions and pleadings expressly for the purpose of delaying the court proceedings. *Chambers*, 501 U.S. at 38. That is simply not the situation here, where ITW's Motion to Strike caused no delay whatsoever.

### (vi)   ITW Hired a Legitimate and Well Respected Expert, Which Conduct Is Not Sanctionable.

Lastly, Poly-America argues that ITW's use of Hal Poret as a survey expert was an "unjustified complication," but this claim to fees is also without merit. Poly-America admits that an award of expert fees under the exception to the American Rule is rare. The Court's inherent

authority to award expert's fees is "reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012), citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (internal quotations omitted).

There is no reason to stray from the standard in this case. The Court here made no such finding of fraud or bad faith. Indeed, not only did the Court not impose any sanctions during the case, they were never even requested. Nor did the Court enter any rulings stating that it was contemplating sanctions or mention potential sanctionable conduct during trial. This was a routine litigation that ended up being tried, which again confirms that there was a meritorious dispute that could not be resolved earlier in the case. Additionally, though Poly-America cites *MarcTec* to support its argument for fees, the Court's decision in *MarcTec* turned on the fact that the party was forced to incur expert witness expenses to rebut testimony excluded under *Daubert. Id.* at 921-22. MarcTec "pressed forward" after receiving direct evidence that contradicted his allegations, offered unreliable and irrelevant expert testimony, and had its experts offer "junk science," including unrealistic tests and unquantifiable data. *Id.* at 921. That is not the case here. None of the expert testimony was excluded at trial and all *Daubert* motions were denied. While the Court did not find Mr. Poret's testimony to be convincing, there is no evidence that some fraud was perpetrated on the court or that the "temple of justice has been defiled;" therefore, the general rule should apply and no expert witness fees should be awarded.

In sum, ITW acted reasonably throughout the litigation. ITW presented and supported its arguments and motions. None of the conduct cited by Poly-America rises to the level of frivolousness or vexatiousness under the applicable law that justifies displacing the American Rule. Poly-America's motion for fees should therefore be denied.

**C.    The Fees Requested Are Not Tailored to the Alleged Misconduct, and Include Non-Billable and Extraneous Items.**

Even if this Court should find that Poly-America is entitled to some fees, the amount of fees should be reduced. First, the fees requested do not accurately reflect the alleged misconduct

of ITW, and therefore, the court should reduce the award to mirror the claimed vexatiousness.[4] Poly-America does not allege that the entire appeal was frivolous, nor can they, based on the statutory authorization to appeal under 15 U.S.C. § 1071. The court in *Chambers* awarded attorneys' fees because of the "frequency and severity of Chambers' abuses of the judicial system and the resulting need to ensure that such abuses were not repeated." *Chambers*, 501 U.S. at 56-57.[5] Here, however, there is no need for deterrence because ITW's litigation conduct was drastically different from that of Chambers. ITW did not disobey any court orders. No sanctions or warnings were issued to ITW during the litigation. In pursuing this case and presenting its arguments, ITW was acting to protect its longstanding registrations. An award granting attorneys' fees for the entire litigation is excessive and unwarranted.

The amount of fees should also be reduced because Poly-America requests excessive fees for time worked by Legal Administrative Assistants and Summer Associates. Collectively, these fees amount to $57,862.50, which should be excluded from any fee award.

The Affidavit filed by Poly-America claims that the legal assistants did not bill for secretarial or non-billable tasks. In spite of that assertion, however, quite a few of the billing entries include non-billable tasks. In addition, non-billable tasks are lumped together with billable tasks, and it is indiscernible how much time was dedicated to each specific task. For example, legal administrative assistant Gloria Parker block billed 1.8 hours for: "receive and review opposition to Poly-America's motion to dismiss; transmit same to client; receive and review ITW's notice of Voluntary Dismissal of Breach of Contract claim; transmit same to client; begin draft shell objection for J. Selinger, edit same; file same with Court and transmit same to client." (Dkt. 123 at APP020). Each of the underlined entries is not a billable task. In another entry from February 15, 2019, Parker charged 2.8 hours to the client for "organization of the record," which is not a

---

[4] When the Court exercises its inherent power, the amount of fees awarded "should never be more . . . than the amounts expended as a result of the misconduct." Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 28(B)(2), at 4-40 (4th ed. 2008).

[5] In *Chambers*, the plaintiff attempted to place certain properties at issue beyond the reach of the courts, and intentionally withheld information in response to direct questioning from the Court. *Chambers*, 501 U.S. at 37. Chambers ignored preliminary injunctions and the District Court's judgment. *Id.* at 38-39. Sanctions were levied on Chambers on three separate occasions for contempt. *Id.* at 39.

billable task (Dkt. 123 at APP049). Another entry from August 20, 2019 lists 8.10 hours of Parker's time for "Continued attention to Opposition to ITW's Motion in Limine; Efile and serve same; Redact same and transmit to client; Attention to updated pretrial deadlines; Receive Plaintiff's physical samples and follow up thereon with J. Selinger and S. Powley; Further attention to objections and deposition counter-designations; File and serve same; Compile Appendix in support of opposition to motion to exclude Klein testimony in response to request from Court; Transmit same to Court via Federal Express; Attention to Plaintiff's Trial Exhibits; Follow up thereon with S. McCoy; Transmit .txt deposition files to T. Lodge, graphics." Each of the underlined entries is not a legal task that should be billed to the client, and thus, should not be included in the calculation of fees here. Additionally, Poly-America should not be entitled to recover summer associate fees.

Nor is Poly-America entitled to duplicative legal fees. *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016). Poly-America's invoices indicate that McCoy and Parker, two legal administrative assistants, have several instances of potentially overlapping time:

| Date | Entry | G. Parker Time Billed | S. McCoy Time Billed |
|---|---|---|---|
| 8/31/19 | Trial preparation (Dkt. 123, at 113) | 4.0 | 4.0 |
| 9/1/19 | Trial preparation (Dkt. 123, at 116) | 1.0 | 9.0 |
| 9/2/19 | Trial preparation (Dkt. 123, at 116-17) | 17.00 | 16.4 |
| 9/3/19 | Trial preparation and attendance at trial (Dkt. 123, at 117) | 15.0 | 12.8 |
| 9/4/19 | Trial preparation and attendance at trial (Dkt. 123, at 117) | 12.5 | 2.5 |
| 9/5/19 | Post-trial matters (Dkt. 123, at 118) | 3.1 | 1.5 |
| 9/6/19 | Post-trial matters (Dkt. 123, at 118) | 3.2 | 0.3 |

The potential overlap and lack of description of specific tasks in these entries further confirms that these fees are excessive and should be reduced.

### III.    CONCLUSION

For the aforementioned reasons, Poly-America's Motion for attorneys' fees and expert fees should be denied. Poly-America grossly mischaracterized ITW's litigation conduct, which does not rise to the level of frivolousness or vexatiousness required to divert the American Rule. Further, even if this Court does award fees, the amount requested should be reduced.

Respectfully Submitted,

_____/s/*John M. Jackson*_____
John M. Jackson
Texas State Bar No. 24002340
jjackson@jw.com
**JACKSON WALKER, LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000
(214) 953-5822 – Fax

Robert E. Browne (pro hac vice)
John A. Cullis (pro hac vice)
Lawrence E. James, Jr. (pro hac vice)
Seth B. Herring (pro hac vice)
**REED SMITH LLP**
10 S Wacker Drive # 4000
Chicago, IL 60606
Tel.: (312) 207-1000
Fax:  (312) 207-6400
jcullis@reedsmith.com

Date: October 17, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case file system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by electronic mail today, October 17, 2019.

_/s/ John M. Jackson_
John M. Jackson